# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Mr. A.,** an individual,<br>WEBB COUNTY DETENTION CENTER<br>9998 S Highway 83<br>Laredo, TX 78041<br><br>Plaintiff,<br><br>vs.<br><br>**U.S. IMMIGRATION AND**<br>**CUSTOMS ENFORCEMENT,**<br>500 12th Street SW<br>Washington, DC 20536;<br><br>**RONALD D. VITIELLO**, in his official<br>capacity, Acting Director and Deputy<br>Director, U.S. Immigration and Customs<br>Enforcement,<br>500 12th Street SW<br>Washington, DC 20536;<br><br>**U.S. DEPARTMENT OF**<br>**HOMELAND SECURITY**,<br>245 Murray Lane SW<br>Washington, DC 20528;<br><br>**KIRSTJEN NIELSEN**, in her official<br>capacity, Secretary, U.S. Department<br>of Homeland Security,<br>25 Murray Lane SW<br>Washington, DC 20528;<br><br>**MATTHEW WHITAKER**, in his official<br>capacity, Acting Attorney General of the<br>United States, U.S. Department of Justice,<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____<br><br>COMPLAINT FOR INJUNCTIVE AND<br>DECLARATORY RELIEF |

Plaintiff Mr. A.[1] ("Plaintiff"), through his counsel Haynes and Boone, LLP and the Texas Civil Rights Project, hereby requests that this Court immediately enter a temporary restraining order and preliminary injunction against Defendants, to bring an end to Defendants' unlawful forced separation of his family unit, and to secure the reunification of Plaintiff with his children. In support hereof, Plaintiff respectfully states as follows:

## INTRODUCTION

1.    Plaintiff Mr. A. is an asylum seeker from El Salvador who entered the United States with his family in November 2018. Mr. A. and his two children, A. and C., traveled to the United States in fear for their lives, fleeing threats of violence and death made against them in El Salvador. Mr. A. and his children intended to seek asylum and safety in this country.  Instead, Mr. A. has been baselessly accused of being a criminal, and based on this spurious allegation, he has been forcibly separated from his young children.

2.    Mr. A. and his children have suffered severe psychological and physical distress from their wrongful separation. One of his children was already ill when the family was separated, and Mr. A. has not been able to confirm her health or whether she is receiving medical treatment.

3.    Despite this distress, Mr. A. has attempted to participate in the asylum process— but was unable to successfully do so owing to the trauma of being separated from his children. His immigration attorney was not contacted to participate in his credible fear interview, and the request for review of the negative determination of that interview was denied.

---

[1] Plaintiff has contemporaneously filed a separate Motion to Proceed Using Pseudonym to permit him to proceed pseudonymously in light of the risk to his personal safety that would result from the disclosure of his identity.

4.      Counsel for Mr. A. have repeatedly sought the government's reasoning for continued family separation but have received no meaningful response.  Counsel for Mr. A. have provided the government with information establishing Mr. A.'s lack of criminal history, but the government has not acknowledged the existence of this evidence or explained how it fails to support immediate reunification.

5.      Mr. A. is owed a meaningful chance to participate in the asylum process. Therefore, Mr. A. must be reunited with his children, and then permitted to participate in a fair and constitutionally-sound asylum proceeding.

6.      Plaintiff has been informed that he is subject to immediate deportation. If this Court does not intervene, Mr. A. will be removed from the country on the basis of his constitutionally deficient asylum proceeding.  Mr. A. seeks an injunction requiring the government to reunify his family and to subsequently provide a sufficient credible fear interview that does not ignore Mr. A.'s evidence of non-criminal history so that he can meaningfully participate in a fair and constitutionally sound asylum proceeding.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States, including the Immigration and Nationality Act and the Administrative Procedure Act (APA), which expressly creates a right of action and waives the government's sovereign immunity. See 5 U.S.C. §§ 702, 706.

8.      The Court has the authority to issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and Federal Rule of Civil Procedure 57.

9.      This Court also has authority to grant injunctive relief in this action pursuant to 5 U.S.C. §§ 702 and 706 and Federal Rule of Civil Procedure 65.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more Defendants reside within this District. Additionally, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District, including Defendants' decision to implement the policies at issue in this action, as well as, upon information and belief, Defendants' forming of their decision that ultimately led to the separation of Mr. A. from A. and C.

## PARTIES

11.     Plaintiff Mr. A. is a native and citizen of El Salvador. He entered the United States on November 2, 2018 with his two children to seek asylum and safety from the persecution they suffered in their home country. He is currently being detained at the Webb County Detention Center in Laredo, Texas.

12.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of the U.S. Department of Homeland Security ("DHS"), headquartered in Washington, DC, and is the federal agency responsible for carrying out removal orders and administering the policies and practices of detaining non-citizens in the United States.

13.     Defendant Ronald D. Vitiello is being sued in his official capacity as Acting Director and Deputy Director of ICE. In this capacity, he is responsible for the ICE policies regarding the detention of non-citizens in the United States.

14.     Defendant DHS is a Department within the Executive Branch of the United States Government, headquartered in Washington, DC, and is the federal agency responsible for enforcing the immigration laws of the United States.

15.     Defendant Kirstjen Nielsen is being sued in her official capacity as the Secretary of DHS. In this capacity, she directs each of the component agencies within DHS, including ICE. She is responsible for the administration of immigration laws and policies, including those laws and policies regarding the detention of migrant families and the forced separation of families pursuant to the Administration's "Zero Tolerance" policy.

16.     Defendant Matthew Whitaker is being sued in his official capacity as the Acting Attorney General of the United States. In this capacity, he is responsible for administering U.S. immigration laws pursuant to 8 U.S.C. § 1103, and he has the authority to grant asylum and other relief to non-citizens.

## FACTUAL BACKGROUND

17.     Mr. A., A., and C. are natives of El Salvador. They entered the United States on November 2, 2018 to seek asylum. Their claims for protection in the United States stem from threats and violence that Mr. A. experienced while living in El Salvador.

18.     Mr. A. is a single father, separated from his children's mother, and is responsible for raising his daughter A. and son C.

19.     Mr. A. works hard to provide for his children but has limited economic resources.

20.     In April of 2018, Mr. A. began to receive threats from a powerful Salvadoran gang known as MS-13 demanding exorbitant sums of money and threatening extreme and violent

consequences for non-payment. Mr. A. was unable to pay the outrageous sums, and he immediately attempted to escape the perilous situation by fleeing with his children to stay with his uncle in another area in El Salvador.

21.     However, even this other area in the country proved unsafe.  The gang followed him and continued to send escalating threats of violence targeting Mr. A. and his family, including extremely graphic death threats targeting his two young children, A. and C.

22.     Mr. A. believes that law enforcement in his country is corrupt and infiltrated by gang members.  For example, he understands that some police officers in his home community are gang members.  In El Salvador, gang members may be identified by their tattoos.  Based on a report of his neighbor, Mr. A. understands that at least one police officer disclosed that he is also a gang member by revealing a gang tattoo hidden on the inside of his lip.

23.     Despite his belief that the police are corrupt, in a desperate bid to save his children, Mr. A. made several attempts to obtain help from Salvadoran law enforcement. However, law enforcement was not responsive, and the gang continued to send worsening threats of violence and death. Mr. A. feared for not only his life, but also for the lives of his children. The threats followed him even when he left his community to seek safety in another area of his country.

24.     Unable to hide or find safety in El Salvador, Mr. A. finally decided that he and his children would never be safe anywhere in El Salvador, and he made the difficult decision to flee to the United States in order to protect his children from near-certain harm and death.

25.     Mr. A. and his children crossed the U.S. border on November 2, 2018 and were apprehended by CBP officers shortly after crossing. The officers took Mr. A.'s fingerprints and

placed him, A., and C. on a bus that took them to a processing station known colloquially as the "hielera," or "ice box."

26.     At the processing station, CBP officers accused Mr. A. of being a member of the MS-13 gang—the same gang that Mr. A. fled.  The officers made vague references to a criminal record of which Mr. A. had no knowledge. Mr. A. attempted to explain to the officers that he had never been affiliated with any gang, and he produced official documentation attesting to his innocence and lack of a criminal record. In addition, Mr. A. removed his clothing and showed his body to the agents to demonstrate his complete lack of tattoos, which are a hallmark indicator of gang affiliation.

27.     Despite the overwhelming evidence to the contrary, the CBP officers continued to insist that Mr. A. was affiliated with a criminal gang, yet they refused to provide any evidence supporting their groundless accusations. They took Mr. A., A., and C. to a small cell in an over-crowded detention facility without access to adequate bedding, clothing, and sanitary supplies.

28.     Almost immediately, Mr. A.'s daughter became ill and developed persistent diarrhea, but the facility provided no medical attention. Instead, DHS officers continued to question Mr. A. about his alleged gang affiliation and criminal history, and they refused to acknowledge his substantial documentation demonstrating the falsity of their allegations.

29.     Although Mr. A. possessed several credible affidavits attesting to his good moral character, work ethic, and lack of any criminal record, including an affidavit from the Salvadoran Government acknowledging his lack of a criminal record, the DHS officers continued to accuse him of gang affiliation.

30.     Neither at that time nor at any time since has the government provided any evidence to substantiate this allegation of criminal background and gang membership.

31.     On November 5, 2018, while Mr. A. was attending a court appearance, DHS officers covertly separated Mr. A. from A. and C. Mr. A. was not informed of, and did not consent to, the impending separation and was given no opportunity to contest it. Instead, he left the detention facility to attend his hearing, and when he returned, his children were gone. Thereafter, Mr. A. was taken, alone, to an ICE detention facility without any knowledge of his children's whereabouts, or any guarantee that he would ever see them again.

32.     Also on November 5, 2018 (the day of the separation), Laura Peña, counsel for Mr. A., wrote to Defendants to advise that Mr. A. sought immediate family reunification.

33.     Immediately after being separated from his children, Mr. A. began experiencing overwhelming anxiety and depression stemming from the uncertainty regarding whether his family would ever be reunited. Over time, he grew increasingly despondent and withdrawn; he stopped eating, suffered from worsening symptoms of exhaustion and depression, and began to experience difficulty sleeping. The emotional toll of the separation impaired his ability to focus on his asylum claim and, as a result, he struggled to effectively communicate his fear of returning to El Salvador during his credible fear interviews.

34.     Mr. A.'s credible fear interview occurred on November 27, 2018, more than three weeks after his involuntary separation. During his credible fear interview, he continued to suffer the physical and emotional effects of separation.  He attempted to explain the persecution he experienced in his home country but did not fully understand the proceedings and was not able to

explain his story cogently.  Despite his difficulties, during the credible fear interview, he again pressed for information about his children and asked to be reunified with them.

35.     Mr. A.'s symptoms are consistent with the acknowledged effects of forced family separation.  As the American Academy of Pediatrics has explained, forced family separation exacerbates suffering and causes "prolonged exposure to serious stress without the buffering protection afforded by stable, responsive relationships . . . [which can] harm short- and long-term health."  Letter from Colleen A. Kraft, President, American Academy of Pediatrics, to the Hon. Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security (Mar. 1, 2018), https://downloads.aap.org/DOFA/AAP%20Letter%20to%20DHS%20Secretary%2003-01-18.pdf.  In addition, "[s]tudies of detained immigrants have shown that children and parents may suffer negative physical and emotional symptoms from detention, including anxiety, depression, and posttraumatic stress disorder."  AAP Statement on Executive Order on Family Separation, Colleen   Kraft,   President,   American   Academy   of   Pediatrics   (June   20,   2018), https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Statement-on-Executive-Order-on-Family-Separation.aspx (hereinafter *AAP Separation Statement*).

36.     In the time since the unlawful separation, Mr. A. was only offered three brief opportunities to communicate with his children. The trauma of hearing his terrified and suffering children crying on the phone amplified the severity of his anguish and made focusing on his asylum claim even more difficult. In the time since those brief phone calls, Mr. A. has neither seen his children nor received any confirmation regarding their safety and well-being, which further exacerbates his despair.

37.     Defendants' only purported basis for the continued separation of Mr. A. from his children is a vague allegation of criminal gang affiliation, but Mr. A. is not a gang member and has never been tried for or convicted of any crime. DHS has refused to provide any documentation or evidentiary support for its baseless allegations against Mr. A. but has nevertheless continued to prevent him from having physical contact with his children, an inexcusable action intended to psychologically devastate Mr. A. to the detriment of his asylum proceedings. As a result, Mr. A. has been unable to properly seek a fair credible fear determination due to the devastating toll of separation from his children. Accordingly, Defendants' arbitrary and capricious violation of Mr. A.'s constitutional rights has impaired the validity of his credible fear determination to such an extent that the law compels that his credible fear claims be wholly reconsidered after the family has been reunited.

38.     Counsel for Mr. A. has attempted to provide information to the government multiple times making clear that Mr. A. is not a criminal, and that he is entitled to reunification. To date, the government has not responded to the evidence other than to repeat the unsubstantiated allegation that Mr. A. is a criminal.

39.     On December 20, 2018 Mr. A.'s request for reconsideration of his negative credible fear determination was denied.

40.     Mr. A. remains separated from his children, and the family reports becoming increasingly traumatized as they endured Christmas without each other, lacking any hope of reunification or justice.

41.     Despite the injunction in *Grace v. Whitaker*, (*see* Order, *Grace v. Whitaker*, -- F. Supp. 3d -, 2018 WL 6628081, No. 1:18-cv-01853-EGS (D.D.C. Dec. 19, 2018)) on January 2, 2019, Mr. A.'s second request for reconsideration of a credible fear interview was denied.

42.     Mr. A. now stands in danger of immediate deportation without his children, and his children may be in danger of losing their father forever, if he is returned to face the violent forces that forced them to flee.

## EXHAUSTION OF REMEDIES

43.     There is no exhaustion requirement because no administrative agency exists to adjudicate Plaintiffs' constitutional challenges. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995); *Arango-Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994). Neither an immigration judge nor the Board of Immigration Appeals can rule on Plaintiffs' constitutional claims. *See Matter of C--*, 20 I&N Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations." (citing *Bagues-Valles v. INS*, 779 F.2d 483, 484 (9th Cir. 1985)).

44.     Although he lacks any administrative means of recourse, Plaintiff (both individually and by and through his counsel) has nonetheless continued to petition the government for redress of his continued deprivation of his constitutional rights, but those efforts have proven fruitless. Counsel for Mr. A. have repeatedly sought the government's reasoning for continued family separation but have been unable to obtain any meaningful response. Counsel for Mr. A. have provided the government with information establishing Mr. A.'s lack of criminal history, but the government has not acknowledged the existence of this evidence or explained how it fails to

support immediate reunification.  Plaintiff has no adequate means of administratively adjudicating his claims, and his repeated efforts to address his constitutional claims have been to no avail.

## CAUSES OF ACTION

### COUNT ONE: FAMILY SEPARATION IN VIOLATION OF SUBSTANTIVE DUE PROCESS

45.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

46.    The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Mr. A. and his children, A. and C.

47.    Mr. A. has a constitutional fundamental right to family integrity under the substantive component of the Due Process Clause of the Fifth Amendment. *Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 499 (D.D.C. 2018) (acknowledging parents' "fundamental liberty interest in family integrity, and in the care, custody, and control of their children"); *M.G.U. v. Nielsen*, No. 18-1458-PLF, 2018 WL 3474189, at *6 (D.D.C. July 18, 2018) (same); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) (parents' rights "in the care, custody, and control of their children" are "the oldest of the fundamental liberty interests recognized by this Court."); *Ms. L.*, 302 F. Supp. 3d at 1161 ("[I]t has long been settled that the liberty interest identified in the Fifth Amendment provides a right to family integrity or to familial association.").

48.    The separation of Mr. A. from his children violates their constitutional right to family integrity.  Defendants' separation of Mr. A. from A. and C. does not further any legitimate purpose, nor any compelling government interest that justifies a violation of Plaintiff's substantive due process right to family integrity.

49.     The separation of Mr. A. from A. and C. shocks the conscience, in light of the government's refusal to acknowledge evidence that Mr. A. poses no threat to A., C., or the broader community and has no criminal history in his home country.

50.     Mr. A. has no other adequate remedy at law to preserve their constitutional rights. Defendants have provided no other avenue to challenge their actions.

51.     Mr. A., A. and C. are suffering irreparable harm with each day their separation continues, and their separation could become permanent if the government is permitted to deport Mr. A. to immediate risk of danger in his home country of El Salvador.

### COUNT TWO: FAMILY SEPARATION IN VIOLATION OF SUBSTANTIVE DUE PROCESS: RIGHT TO BE FREE FROM TORTURE AND/OR CRUEL OR INHUMANE TREATMENT

52.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

53.     Mr. A. has a substantive due process right to be free from torture and/or other cruel, inhumane, and degrading treatment. *See Palko v. Connecticut*, 302 U.S. 319, 326 (1937) (noting that the Due Process Clause must at least "give protection against torture, physical or mental"), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 794 (1969); *see also Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[C]onduct that shocks the conscience or afford[s] brutality the cloak of law . . . violates the [Due Process Clause]." (internal quotations omitted)).

54.     Defendants' act of separating Mr. A. from A. and C. for over two months — including to this day—meets the definition of torture and otherwise constitutes cruel, inhuman, and degrading treatment. See 18 U.S.C. § 2340(1) (""[T]orture' means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain

or suffering . . . upon another person within his custody or physical control."); 18 U.S.C. §

2441(d)(1)(A) (War Crimes Act defining torture to include "act[s] specifically intended to inflict

severe physical or mental pain or suffering . . . for the purpose of . . . punishment, intimidation,

coercion, or any reason based on discrimination of any kind"); Convention Against Torture and

Other Cruel, Inhuman or Degrading Treatment or Punishment art. 1, ¶ 1 (Dec. 10, 1984), 1465

U.N.T.S. 85 (defining torture as including causing "severe pain or suffering, whether physical or

mental," without the requirement to show prolonged mental harm).

55.     Furthermore, Defendants have separated Mr. A. from his children as part of a

family separation policy that is intended to advance Defendants' political goals of coercing and

deterring asylum seekers from entering the United States. To separate a parent from his children,

thereby inflicting severe mental pain and suffering on both father and child, for coercive and

political purposes is torture and cruel, inhuman, and degrading treatment.

56.     Mr. A. has no other adequate remedy at law.  Defendants have provided no other

avenue to challenge their actions.

57.     Mr. A., A. and C. are suffering irreparable harm with each day their separation

continues.

### COUNT THREE: FAMILY SEPARATION IN VIOLATION OF PROCEDURAL DUE PROCESS

58.     All of the foregoing allegations are repeated and re-alleged as though fully set forth

herein.

59.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all

"persons" on United States soil, including Mr. A. and his children, A. and C.

60.     Mr. A. and his children have a liberty interest under the Due Process Clause in remaining together as a family.

61.     Under *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976), the Supreme Court requires a court to weigh the individual's interest, the risk of erroneous deprivation of that interest, and the government's interest.

62.     Mr. A.'s interest in being reunited with his children is fundamental and profound.

63.     The risk of erroneous deprivation is substantial, given the government's refusal to provide any information regarding the basis of its determination and refusal to entertain evidence regarding Mr. A.'s fitness to be reunited with his children. The separation of Mr. A. from his children was undertaken without any hearing, and Mr. A. was not given any paperwork or information to indicate how he can retrieve his children from detention. While Mr. A. may not have a right to insist on a "beyond a reasonable doubt" standard of proof, the government must be required to provide some evidence to justify its allegations of gang affiliation, especially in light of Plaintiff's evidence of non-affiliation.  Without such basic protections, the government could conceivably circumvent basic constitutional and statutory protections by making baseless allegations against wide swaths of the immigrant community.[2]

64.     Mr. A.'s significant interest and the risk of erroneous deprivation outweigh any burden on Defendants that providing procedural safeguards would occasion.  Mr. A. therefore

---

[2] In fact, there is evidence that spurious 'government allegations of gang affiliation are part of a larger strategy to circumvent these protections. *See, e.g.,* Ginger Thompson, *Families are Still Being Separated at the Border, Months After "Zero Tolerance" Was Reversed.*  ProPublica, Nov. 27, 2018, https://www.propublica.org/article/border-patrol-families-still-being-separated-at-border-after-zero-tolerance-immigration-policy-reversed. *See also Medina v. DHS,* 313 F. Supp. 3d 1237, 1249 (W.D. Wa., May 15, 2018) (Order Granting Plaintiff's Motion for Preliminary Injunction, noting government's repeated failure to substantiate allegation of gang affiliation).

seeks protection under the Fifth Amendment in the form of the Court's review of Defendants' decision to forcibly separate his family.

65.     Mr. A. has no other adequate remedy at law.  Defendants have provided no other avenue to challenge their actions.

66.     Mr. A., A. and C. are suffering irreparable harm with each day they are separated from each other.

**COUNT FOUR: ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS PRACTICE**

67.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

68.     The APA prohibits agency action that is arbitrary and capricious and contrary to a constitutional right.

69.     Defendants' separation of Mr. A. from his children without any justification and without a mechanism, protocol, or system to guarantee their reunification is final agency action that is arbitrary and capricious. It accordingly violates the APA. 5 U.S.C. § 706(2)(A).

70.     Mr. A. is not a criminal and has never been convicted of any crime in the United States or El Salvador other than the border crossing that began his current ordeal.

71.     The only basis for Defendants' imposition of family separation is a vague and unsubstantiated allegation, made by Defendants themselves, that he is somehow a criminal.

72.     Mr. A. has challenged Defendants' decision by presenting evidence, by requesting reunification and by requesting justification for denial of reunification – all to no avail.

73.     Defendants' continued refusal to reunite the family is a final agency action that marks the consummation of the agency's decision-making.  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997).   Defendants' continued refusal to reunite the family in order to provide a Credible Fear Interview untainted by unconstitutional conduct is similarly a final agency action that is the consummation of the agency's decision-making.[3]

74.     Mr. A. has no other adequate remedy at law. *See Sackett v. EPA*, 566 U.S. 120, 131 (2012). There is no statutory or administrative procedure to challenge Defendants' decision.

75.     Mr. A., A. and C. are suffering irreparable harm with each day they are separated from one another.

### COUNT FIVE: VIOLATION OF ASYLUM STATUTE

76.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

77.     Under United States law, noncitizens fleeing persecution shall have the opportunity to apply for asylum in the United States. See 8 U.S.C. § 1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1). Mr. A. and his children have a private right of action to vindicate their right to apply for asylum.

78.     Defendants' separation of Mr. A. from his children violates federal asylum law because it infringed on his and his children's ability to pursue their asylum claims.

---

[3] Mr. A. has made multiple unavailing requests for Defendants to reconsider their negative determinations in light of the constitutional defects in the process provided to him.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. A. respectfully requests that the Court grant the following relief:

1.      Issue a Temporary Restraining Order barring defendants from removing Plaintiff from the United States;

2.      Issue a Preliminary Injunction ordering the immediate reunification of Mr. A. with his children;

3.      Declare that the separation of Mr. A. from his children is unlawful;

4.      Preliminarily and permanently enjoin Defendants from continuing to separate Mr. A. from his children;

5.      Preliminarily and permanently enjoin Defendants from removing Mr. A. or his children from the United States until they are reunited and Mr. A. has been provided with a constitutionally sound, full, and fair opportunity to pursue his asylum claim, including a new credible fear interview free from the constitutional defect of family separation;

6.      In the event Mr. A. is not permitted to remain in the United States, enjoin Defendants from separating Mr. A. from his children absent his permission;

7.      Order any other relief the Court deems just, equitable and proper.

DATE: January 2, 2019                              Respectfully submitted,

                                                   HAYNES AND BOONE, LLP

                                                   By:_____

                                                   Michael Scanlon*
                                                   DC Bar No. 1048644
                                                   800 17th Street NW
                                                   Suite 500
                                                   Washington, D.C.20006
                                                   Telephone: (202) 654-4570
                                                   Facsimile: (202) 654-4249
                                                   michael.scanlon@haynesboone.com

                                                   Paloma Ahmadi*
                                                   State Bar No. 24088714 (TX)
                                                   State Bar No. 1006981 (DC; Inactive)
                                                   112 E. Pecan Street
                                                   Suite 1200
                                                   San Antonio, TX 78205
                                                   Telephone: (210) 978-7427
                                                   Facsimile: (210) 554-0409
                                                   paloma.ahmadi@haynesboone.com

                                                   Wesley D. Lewis*
                                                   TX State Bar No. 24106204
                                                   600 Congress Avenue, Suite 1300
                                                   Austin, Texas 78701
                                                   Telephone: (512) 867-8412
                                                   Facsimile: (512) 867-8640
                                                   wesley.lewis@haynesboone.com

                                                   Luis Campos*
                                                   TX State Bar No. 00787196
                                                   John Brent Beckert*
                                                   TX State Bar No. 24092104
                                                   Liz Dankers*
                                                   TX State Bar No. 24105776
                                                   Joanna Pearce*
                                                   TX State Bar No. 24110203
                                                   Nicholas Nash*

TX State Bar No. 24110149
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5062
Facsimile: (214) 200-0789
luis.campos@haynesboone.com
brent.beckert@haynesboone.com
liz.dankers@haynesboone.com
joanna.pearce@haynesboone.com
nick.nash@haynesboone.com

TEXAS CIVIL RIGHTS PROJECT
Laura Peña*
1017 W. Hackberry Avenue
Alamo, Texas 78516
Telephone: 956-787-7181
laura@texascivilrightsproject.org


PRO BONO ATTORNEYS FOR
PLAINTIFF MR. A.

*Indigent client certification
forthcoming per Local Rule 83.2(g)*