# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Mr. A., an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No.: 19-0015(PLF) |
| | § | |
| U.S. IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, ET AL., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

Defendants[1] respectfully oppose Mr. A.'s emergency motion for injunctive relief (ECF

No. 4).

## BACKGROUND

### I.    Factual Background

On November 2, 2018, Mr. A. and his two children (Child A.. and Child C.) entered the

United States, seeking asylum.  Complaint (Compl.) ¶17.  They are all native El Salvadorans.  *Id.*

Mr. A. claims that his family seeks protection in the U.S. to escape the threats and violence from

the MS-13 gang in El Salvador. Compl. ¶17, 20.  Upon crossing the U.S. border, agents from the

U.S. Custom and Border Protections (CBP) arrested Mr. A. and his two children for the civil

offense of illegal entry. Eduardo Alvarado Declaration (Alvarado Decl.) ¶ 4.[2]  CBP agents took

---

[1]      According to the Complaint (ECF No. 1), the named Defendants include: U.S. Immigration and Customs Enforcement (ICE); Mr. Ronald Vitello, in his official capacity as Acting Director of ICE; U.S. Department of Homeland Security (DHS); Secretary Kirstjen Niel, in her official capacity as Secretary of DHS; Mr. Matthew Whitaker, in his official capacity as Acting Attorney General.

[2]      Defendants are separately filing the Alvarado Declaration under seal.

Mr. A.'s fingerprints for processing purposes. Compl. ¶26. According to Mr. A., CBP placed

him and his children in a processing station. Compl. ¶ 25. Border Patrol Stations are short-term

custody facilities, designed to house detained immigrants temporarily for purposes of

expeditiously processing them at the border. Alvarado Decl. ¶ 7. The review conducted at these

temporary locations includes, among other things, processing minors under the William

Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), if

applicable, if applicable, and the *Flores* Stipulated Settlement Agreement, which proscribes

conditions for detention of minors. Alvarado Decl. ¶ 7.

A check on Mr. A. through the "Treasury Enforcement Communications System" or

"TECS" revealed that Mr. A. had been identified as a member of a Salvadoran gang. Alvarado

Decl. ¶8. *See also* Compl. ¶ 26. Mr. A., however, denied any affiliation with the MS-13 gang or

having a criminal history. Alvarado Decl. ¶8. Thereafter, CBP conducted another investigation

on Mr. A., by contacting Border Patrol agents assigned to the Border Integration and

Coordination Center (GCIF). *Id.* ¶ 9 (elaborating on how CBP conducted its investigation of Mr.

A.). A search on GCIF revealed that Mr. A. was previously designated by Salvadoran officials

as a member of the MS-13 gang member. *Id.* ¶10. CBP routinely relies on these two databases

for processing aliens detained at the border. *Id.* ¶¶ 8-9.[3]

In light of Mr. A.'s gang affiliation, CBP referred Mr. A. and his two children to ICE,

either for detention at a Family Residential Center (FRC) or release them under the Alternatives

to Detention (ATD) program.[4]  Alvarado Decl.  ¶12. ICE was unable to place Mr. A. and his

---

[3]     To be clear, Plaintiff's Complaint neither includes CBP as a defendant nor specifically
challenges CBP's determination that Mr. A. has gang affiliation.

[4]     ATD is an program administered by ICE that provides approved level of supervision
during removal proceedings.  Alvarado Decl. ¶11 n.3.

two children in a FRC nor could it place him in ATD program due to his known gang affiliation. *Id.*; *see* Melissa Harper Declaration (Harper Decl.) ¶¶ 10-17 (explaining the reasons for not housing Mr. A. and his children in a FRC or release Mr. A. under the ATD program).   As elaborated below, due to the nature of family detention at the FRCs, ICE does not house individuals, like Mr. A., who have a criminal history or gang affiliation in these facilities. Harper Decl. ¶¶ 10-16.

Given that ICE cannot house Mr. A. and his children at a FRC, CBP had two alternatives, either release them altogether or continue to detain Mr. A. and separate his children.  Alvarado Decl. ¶13.  Due to Mr. A.'s gang affiliation, CBP deemed it a public safety concern to release him from immigration custody.  *Id.* Without other appropriate accommodation, CBP processed Mr. A.'s two children (Child A. and Child C.) as "unaccompanied alien children" (UACs) and released them to the Office of Refugee Resettlement (ORR), a component of the U.S. Department of Health and Human Services (HHS).  Alvarado Decl. ¶ 13.[5]

After the children were referred to ORR, ORR did not revisit the unaccompanied status determination of Child A. and Child C..  Declaration of Marivic Fields Decl. (Fields Decl.)  ¶6. In fact, ORR's policies mandate that it process the children consistent with the TVPRA to find an appropriate sponsor. *Id.* ¶6.  In this case, the two children's mother (Mrs. A.), a resident in Washington, applied to sponsor them.  *Id.*¶ 7.   ORR conducted a background check on the mother to confirm that she does not have any criminal history and that she has the ability to support them.  *Id.* ¶7.   ORR ultimately approved the mother's sponsorship application and

---

[5]    CBP subsequently referred Mr. A. for criminal prosecution under 8 U.S.C. 1325(a) for illegal entry into the U.S.  Alvarado Decl. ¶14.  Mr. A. was convicted and sentenced to time served.  *Id.*

reunited Child A. and Child C. with their mother on February 6, 2019.  *Id*. ¶8; *see also* Gov. Exh.

A (discharge notifications).

In the meantime, on November 27, 2018, Mr. A. had a Credible Fear (CF) hearing with

U.S. Custom and Immigration Services (USCIS),[6] which resulted in a negative determination.

PI Mot. ¶23, 26; *see also* Compl. ¶34.[7]  On December 17, 2018, Mr. A. challenged  his negative

CF hearing determination with an Immigration Judge (IJ).  PI Mot. ¶ 26.  On the next day, the IJ

affirmed the negative CF determination and ordered Mr. A. removed.  *See* Gov. Exh. B

(Removal Order).  According to Mr. A., he twice sought reconsideration of the CF hearing

determination without success.  PI Mot. ¶¶ 29-31.  In fact, USCIS denied his request on January

2, 2019.  *See* Pl. Exh. 9.

On the next day, Mr. A. sued the government and simultaneously sought emergency

injunctive relief.  *See* Complaint (ECF No. 1); TRO/PI Motion (ECF. No. 4).  Due to the partial

federal government shutdown at that time, the Court *sua sponte* issued the January 3, 2019

Memorandum Opinion and Order, which essentially stayed all proceedings in this case. *See Jan.*

*3rd Mem. & Order* (ECF No. 9).  The Court specifically "prohibited [the government] from

removing the United States plaintiff, Mr. A., until further order from [the] Court."  *Id.* at 2.

Mr. A.'s current Complaint raises a number of claims under the Constitution and the

Administrative Procedure Act (APA).  Count I alleges that the separation of Mr. A. from his two

children violated "their constitutional right to family integrity."  *See* Compl. Count I and ¶ 48,

---

[6]      *See* Plaintiff's Exhibit 9 (stating that USCIS was the component that conducted the CF hearing and that the negative determination is not subject to reconsideration).  USCIS is not specifically named as a defendant in this case.

[7]      Mr. A.'s Complaint is cited as "Compl." (ECF No. 1) and "Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (ECF No. 4) is referred to as "Motion" and cited as "PI Mot."

50.[8]  Count II alleges that the family separation violated Mr. A.'s substantive due process rights.

*See* Compl. Count II and ¶ 54.  Count III claims that Mr. A.'s separation from his children

violated his procedural due process.  *Id.* Count III and ¶ 64.  Count IV alleges violation of the

APA for separating Mr. A. from his children without justification.  *Id.* Count IV and ¶ 69.

Finally, Count V alleges violations of asylum law for separating Mr. A. from his children.  *Id.*

Count V and ¶ 78.

    None of these five counts allege that Mr. A.'s negative CF determination or his

placement in expedited removal status violate the law.  Yet, in addition to family reunification,

the Prayer for Relief requests that the Court enjoin the government from removing Mr. A. from

the U.S. and grant him another CF hearing.  *See* Prayer for Relief ¶ 5.

    In any event, given that the two children have been reunited with their mother, a

substantial part of Mr. A.'s requested relief may no longer be viable.

## II.    Family Residential Center

    ICE currently oversees three family residential centers ("FRCs"): the Karnes FRC in

Kansas City, Texas can house up to 830 individuals; the South Texas FRC in Dilley, Texas can

house up to 2,400 individuals; and the Berks County Residential Center in Berks County,

Pennsylvania can house up to 96 individuals. Harper Decl. ¶ 3-5.  FRCs operate under the ICE

Family Residential Standards ("FRS").  *Id.*  The FRS promote a unique, non-secure, open-

movement environment which permits parents and children to live in a dorm-like environment

with access to education, recreational opportunities, and health care on-site. Id ¶¶ 6-9.  The FRS

were developed with input from medical, psychological, and educational subject matter experts

---

[8]     To be clear, Child A. and Child C. are not parties to this lawsuit.  Therefore, arguably, Mr. A. (as the father) may not have standing to seek judicial redress for any purported violation of the two children's constitutional rights.

and various organizations such as the DHS Office of Civil Rights and Civil Liberties ("CRCL") and many non-governmental organizations ("NGOs"). *Id.* ¶ 5.

Family units have freedom of movement throughout the FRCs during daytime hours. Residents have access to libraries, recreational facilities, and playrooms. Harper Decl. ¶¶ 6-7. The focus of the FRCs is to have an environment that encourages family health and safety by providing child-friendly amenities and services in an environment that is conducive to healthy family interactions. Families interact with each other throughout the day.  FRCs are staffed with contracted Resident Advisors in lieu of security officers. *Id.* ¶ 6.

Due to the nature of family detention at the FRCs, ICE does not house individuals with criminal histories in these facilities. Because of the open movement permitted within these facilities, housing individuals with criminal convictions or individuals who have a history of unlawful activity presents an unacceptable risk of harm to the other families residing at the FRCs. *Id*. ¶ 7. Violence, threats, and other behavior that could diminish the safety of residents at an FRC is simply not tolerated. *Id.*

The safety of residents at the FRCs is also a legal obligation. Under the *Flores* Settlement Agreement and *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (finding that the terms of the *Flores* Settlement Agreement applies to accompanied minors), ICE must ensure the safety and well-being of all minors in its custody, including those housed with their parents at an FRC. *Id.* at ¶ 8.

## STANDARD OF REVIEW

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Chaplaincy of Full Gospel Church v. England*, 454 F. 3d 290, 297 (D.C. Cir. 2006) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). It is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Id.* (quoting *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)). "The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." *Davis v. Billington*, 76 F. Supp. 3d 59, 63 (D.D.C. 2014) (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)). This Court has previously explained that "'[a] preliminary injunction is an extraordinary remedy never awarded as of right.'" *Jacinto-Castanon de Nolasco v. ICE*, 319 F. Sup. 3d 491, 497 (D.D.C. 2018) (Friedman, J.) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). The Court further explained that, to prevail, the moving party must make a clear showing of four factors: (1) a substantial likelihood of success on the merits, (2) it would suffer irreparable injury if the injunction were not granted, (3) t an injunction would not substantially injure other interested parties, and (4) the public interest would be furthered by the injunction. *Id.* at 497 (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)).

Courts in this Circuit traditionally have applied the "sliding scale approach" in evaluating these four preliminary injunction factors. *Davis*, 76 F. Supp. 3d at 63-64 (citing *Shirley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011)). The sliding scale, under which a lesser showing of one factor could be compensated for by a strong showing of another, has been called into question by the Supreme Court's decision in *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008). The D.C. Circuit has read *Winter* "at least to suggest if not to hold that a likelihood of

success is an independent, free-standing requirement for a preliminary injunction." *Shirley*, 644 F. 3d at 393. Thus, this Court should "treat the four factors as independent requirements" that must be met for Plaintiff to obtain the relief it seeks. *Id.*

## ARGUMENT

### I.   Injunctive Relief Is Inappropriate Here As Mr. A. Seeks The Ultimate Relief And Not Just To Preserve The Status Quo

In addition to making a clear showing of the four factors outlined above, a party seeking a preliminary injunction is faced with a heightened standard when, as here, "a plaintiff seeks an injunction that would alter the status quo rather than merely preserve it (*i.e.*, a mandatory injunction)." *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018) (citing *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (collecting cases)). Under that heightened standard, "the moving party must "clearly" show that "he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 1998 U.S. App. LEXIS 7871, at *2 (D.C. Cir. 1998) ("we need not reach the question of whether the district court erred in holding that the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction because, as the district court also held, the appellants fail even under the lower standard that they advocate").

Here, Mr. A. requests "preliminary" injunctive relief that is one and the same with the ultimate relief sought in this case. In addition to seeking reunification with his two children,[9] Mr. A. seeks a stay of his removal and a new Credible Fear Hearing. *Compare* PI Mot. at 24-25

---

[9]      As discussed *infra*, given that the two children (Child A. and Child C.) have been reunited with their mother and no longer in ICE's custody, it is unclear whether the Court can provide the relief requested in this emergency motion - namely reunification with his two children

*with* Compl. Prayer for Relief ¶ 5. Mr. A.'s motion thus inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).[10]

## II.   Mr. A. Cannot Demonstrate a Likelihood of Success on the Merits.

### A.   The Court Lacks Jurisdiction Over Mr. A.'s Claims

#### (i)   To The Extent That Mr. A. Is Seeking Habeas Relief, His Claims Fail.

Claims such as those brought by Mr. A. must be directed at the person with custody and control over him as a writ of habeas corpus, and that person would be located in the Southern District of Texas. *See Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004) (For "core" habeas challenges—defined as "challenges to present physical confinement"—brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."); *see also* 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained.").

Here, although not specifically alleged, Mr. A. is actually challenging his detention in federal custody. Therefore, if Mr. A. is raising a claim under 28 U.S.C. § 2241, this Court lacks jurisdiction over such a claim because it must be directed at the person with custody and control over Mr. A., and that person would be not be located in the District of Columbia. *See Padilla*, 542 U.S. at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *see also id.* at 442-43 (citing

---

[10]   *But see Jacinto-Castanon de Nolasco*, 319 F. Sup. 3d at 498 (Friedman, J.) (noting that "the requested preliminary injunction would preserve, rather than alter, the status quo – that is, the 'last uncontested status which preceded the pending controversy.'") (internal citation omitted).

*Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973)) (stating that to have jurisdiction over a habeas action, a federal court must have jurisdiction over the properly named custodian).

Accordingly, the Court should deny Mr. A.'s emergency motion at this point and dismiss the case for improper venue under Fed. R. Civ. P. 12(b(3).  Alternatively, the Court should transfer the matter to the Southern District of Texas, where the case should have been brought. *See* 28 U.S.C. § 1404(a) (stating in part "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.")

### (ii)    This Court Cannot Order ICE To Release Mr. A.

This Court cannot order ICE to release Mr. A. because he is currently subject to a final order of removal. *See* 8 U.S.C. § 1231(a); Gov. Exh. B (Removal Order).  In addition, Mr. A.'s release would only be available through parole and the discretion to make decisions regarding parole has been specifically delegated to DHS by statute. *See* 8 U.S.C. § 1182(d)(5)(A) (DHS may, in its "discretion parole into the United States temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ."). The Supreme Court has recognized that a decision unambiguously "specified by statute 'to be in the discretion of the [Government]'"—as in 8 U.S.C. § 1182(d)(5)(A)—is "shielded from court oversight by § 1252(a)(2)(B)(ii)." *Kucana v . Holder*, 558 U.S. 333, 248 (2010); 8 U.S.C. § 1252(a)(2)(B)(ii) ("no court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]").

More recent cases have recognized the non-reviewability of parole determinations in light of § 1252(a)(2)(B)(ii). *Milardo v. Kerilikowske*, No. 3:16-MC-99, 2016 WL 1305120, *6, 9 (D. Conn. Apr. 1, 2016) (ICE's discretionary parole decisions are "generally not subject to judicial review, and [are] never subject to judicial review by a district court"); *United States v. Bush*, No. 12-cr-0092, 2015 WL 7444640, *1 (W.D. Pa. Nov. 23, 2015) (finding that section 1252(a)(2)(B)(ii) "explicitly denies courts the jurisdiction to review" parole decisions, "except insofar as those claims raise constitutional issues, then only the appropriate court of appeals shall hear the case"); *Naul v. Gonzales*, No. 05-4627, 2007 WL 1217987, *2 (D.N.J. Apr. 23, 2007) (parole denial pursuant to § 1182(d)(5)(A) "is a discretionary decision outside this Court's review").

**B.      Mr. A. Is Unlikely To Succeed On the Merits of His Constitutional and APA Claims**

Mr. A. argues that the forcible separation of his two children from him violated his substantive and procedural process rights under the Constitution and the APA.  *See* PI Mot. at 12-21; *see also* Compl. Counts I through 5.  These arguments lack merit because (1) Mr. A. was determined to have an affiliation with the MS-13 gang and his separation was in accordance to the law; and (2) Mr. A.'s two children have been reunited with their mother.

**(i)      The Separation of Mr. A. From His Two Minor Children Was Consistent With The Law.**

CBP's separation of Mr. A. from his two children was in accordance with applicable law and, therefore, did not constitute a constitutional violation or a violation of the APA.  Upon determining that Mr. A. is affiliated with the MS-13 gang, CBP referred Mr. A. and his two children to ICE for appropriate custody, either in a FRC or in the ATD program.  Alvarado Decl. ¶7.  However, given Mr. A.'s gang affiliation, ICE cannot house them in one of the FRCs

11

because of safety and flight-risk concerns.  Harper Decl. ¶¶10-13.  FRCs are open-plan facilities with free movement for residents, and the government must retain broad discretion to exclude from these facilities individuals whose criminal history or other factors, such as gang affiliation, raise any concern about safety to others housed there.  *See* Harper Decl. ¶¶ 10-11 (discussing that ICE's FRCs cannot accommodate individuals that pose safety concerns). In addition, the risk of flight concerns are even heightened because Mr. A. is subject to a final order of removal.  Harper Decl. ¶17, *see* Gov. Exh. B (Removal Order).  Mr. A. is, therefore, not qualified for the ATD program. *Id.* ¶ 17.

 Mr. A. argues that "the core facts of his case closely track those of the named class plaintiffs in *Ms. L* litigation."  PI Mot. at 14-15 (citing *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1154-55 (S.D. Cal. 2018)).  Mr. A. analogizes himself to Ms. L. and Ms. C. and argues that – like them – he and the children entered the U.S. to seek asylum but the government forcibly separated him from his children.  *Id.* at 14-15.  To be clear, nowhere in Mr. A.'s emergency motion or Complaint did he claim to be a member of *Ms. L.*'s class.  In any event, this argument is misplaced.

In fact, in the *Ms. L.* litigation the court correctly recognized that criminal history may require separation of a family because it would preclude detention in a FRC, and the court excluded individuals with criminal history from the class in that case. *Ms. L. v. ICE*, Civ. A. No. 18-0428, ECF No. 82 at 10 (S.D. Cal. June 26, 2018).  Later, in reviewing the cases of two individuals who had been excluded from the *Ms. L.* class on the basis of their criminal history, the court found that the government's "determination that [aliens with a] disqualifying criminal history that precludes reunification with their children is entitled to deference."  *Ms. L. v. ICE*, Civ. A. No. 18-0428, ECF No. 236 at 3 (S.D. Cal. Sept. 19, 2018).  The court further observed

that the government has "vetted these parents in good faith and made principled decisions in

light of their criminal history and overarching concerns regarding safety of their children and the

public." *Id.* The court elaborated the government had "exercised [its] statutorily prescribed

discretion in a reasonable manner" and that "matters of detention and parole are peculiarly within

the province of the executive branch, and for prudential and other reasons that exercise of

discretion ought not to be disturbed under these circumstances." *Id.*

Here, the government took appropriate steps to ascertain that Mr. A. in fact was

designated as an individual with gang affiliation.  As discussed above, CBP arrested Mr. A. and

his two children when they entered the U.S. illegally.  *Id.* ¶¶ 4-6.   Following the arrest, Mr. A.

denied that he had any gang affiliation or a criminal history.  *Id*. a ¶ 7.  CBP conducted a check

with TECS and GCIF on Mr. A.'s background.  *Id*.  ¶ 8-9 (describing more thoroughly the steps

taken to confirm gang affiliation status).  These investigations confirmed that Mr. A. was

designated as a person with gang affiliation.  *Id.* ¶¶710.  Subsequently, ICE made additional

inquiries about Mr. A.'s gang affiliation status and received confirmation that the information

relating to Mr. A. was correct.  Harper Decl. ¶ 14.  Given this confirmed gang affiliation status,

the government determined that Mr. A.'s history prevented him from being housed in a FRC or

placed in the ATD program and, thus, rendered him ineligible for reunification with his two

children.  At this juncture, Mr. A. remains in ICE's custody due to a final order of removal.

Harper Decl.  ¶ 15.

Under these facts, Mr. A.'s detention in ICE custody was a valid exercise of immigration

enforcement and child welfare authority.  Under these circumstances and the law, Mr. A. cannot

establish a likelihood of success on the merits and the Court should deny his request for a

preliminary injunction.

### (ii)     The Two Children Have Been Reunited Their Mother

As mentioned above, following a confirmation of Mr. A.'s gang affiliation status, CBP

sought to place Mr. A. and his two children at an ICE's FRC or within its ATD program.

Alvarado Decl. ¶11.  ICE, however, was unable to place Mr. A. and his two children in either of

those programs because of his MS-13 gang affiliation.  *Id.* ¶ 12.  At that point, CBP was

confronted with two alternatives: (1) separate Mr. A. from his two children; or (2) release them

altogether from immigration custody.   CBP could not release Mr. A. because of safety concerns

in light his known gang affiliation.  Alvarado Decl. ¶ 13.  Because ICE determined that Ms. A.

should be detained, and because Mr. A. and his children could not be detained together, Mr. A.

became unavailable to retain custody of his children. *Id.* At that point, it became necessary to

process them as "unaccompanied alien children" (UAC).  *Id.*  CBP, therefore, released the

children to the Office of Refugee Resettlement (ORR) of the U.S. Department of Health and

Human Services (DHH).  *Id.*

Once in ORR's charge, it is the agency's policy not to revisit the "unaccompanied" status

of the two children.  Rather, ORR applied the requirements set forth in the TVPRA to ascertain a

suitable sponsor for Child A. and Child C.  Fields Decl. ¶ 6.[11]  ORR "has policies and procedures

in place to ensure the care and safety of children who are apprehended in the United States without

a parent or legal guardian available to provide care and custody and without immigration status."[12]

These "policies require the timely release of children and youth to qualified parents, guardians,

relatives or other adults, referred to as 'sponsors.' Safe and timely release must occur within a

---

[11]     Different expedited procedures apply to *Ms. L.* class members seeking reunification, but
those procedures are not applicable here because Mr. A. is not—and does not claim to be—a *Ms.
L.* class member.

[12]     *See* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-
unaccompanied-section-2#2.1 (last visited Feb. 10, 2019).

setting that promotes public safety and ensures that sponsors are able to provide for the physical and mental well-being of children." *Id. See also* Fields Decl. ¶7.

In this case, ORR identified Mrs. A. as the two children's biological mother, who requested to sponsor them.   Fields Decl. ¶ 8.   Mrs. A. completed an application of sponsorship, which included a criminal background check and a determination whether she has the ability to support Child A. and Child C.  *Id.*  Mrs. A. also provided birth certificate for both children.  *Id.*  ORR found no issues with Ms. A.'s sponsorship application and released the two children to her, their mother, on February 5, 2019. *Id.*; *see also* Gov. Exh. A (the discharged notifications for Child A. and Child C.).

Given that Child A. and Child C. are no longer in ORR's custody, the Court's only option here is to provide Mr. A. with the relief that he seeks with this emergency proceedings, namely to be reunited with his two children. This option requires the Court to order Mr. A.'s release from ICE's custody or, alternatively, to order that ICE agree to remove Mr. A. *with* his children altogether.  For the reasons discussed above, this Court lacks jurisdiction to order the release of Mr. A.

Under the Parental Interests Directive, ICE may be able to reunite Mr. A. with his two children at the time of removal, should Mr. A. make that election.  Harper Decl. ¶ 18.  However, such a relief would likely require the assent and participation of the children's mother, their current custodian, who is not a party to this litigation.  Accordingly, if Mr. A. continues to seek immediate reunification, the Court lacks jurisdictional authority to provide that relief.

### C.       The Court Lacks Jurisdiction To Review Plaintiff's Expedited Removal

Mr. A. appears to challenge his removal order arguing that removal order was constitutionally infirmed and in violation of the APA. *See* PI Mot. at 21; *see also* Compl. Prayer for Relief ¶ 5.[13] Mr. A. argues that the government violated his constitutional rights and acted arbitrarily and capriciously when he was subject to "a Credible Fear Interview while forcibly separated from his two children." *See* PI Mot. at 21.  Even if Mr. A.'s emergency motion and Complaint could be construed as challenging the Plaintiff's removal, the Court lacks jurisdiction to review the removal order.

In situations such as this one—where there is a final order of expedited removal—Congress has unambiguously limited federal jurisdiction over expedited removal orders and negative credible fear findings. 8 U.S.C. § 1252(a)(2)(A); *see also* Gov. Exh. B (Removal Order). The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst* v. *Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (O'Connor, J.). Alien applicants for admission at the border thus lack any constitutional due process rights with respect to admission: "'[w]hatever the procedure authorized by Congress is, it is due process as far as an

---

[13]      As discussed above, the five-count Complaint primarily challenges the separation of Mr. A. from his two children and do not expressly contest Mr. A.'s final removal order.  However, the Prayer for Relief requests that the Court enjoin "Defendants from removing Mr. A. or his children from the United States until they are reunited and Mr. A. has been provided with a constitutionally sound, full, and fair opportunity to pursue his asylum claim, including a new credible fear interview free from the constitutional defect of family separation."  Compl. Prayer for Relief ¶ 5.

alien denied entry is concerned,'" *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. at 543.

Congress has unambiguously limited federal jurisdiction over expedited removal orders and negative credible fear findings. Under the INA, "[n]otwithstanding *any other provision of law* (statutory or nonstatutory) … no court shall have jurisdiction to review" expedited removal orders or credible fear determinations other than as provided for at 8 U.S.C. § 1252(e). 8 U.S.C. § 1252(a)(2)(A) (emphasis added). Section 1252(a)(2)(A)(i) makes clear that, other than as permitted by section 1252(e), "no court shall have jurisdiction to review" (i) "any individual determination or to entertain *any* other cause or claim *arising from or relating to* the implementation or operation of an order of removal pursuant to section 1225(b)(1)"; (ii) "a decision by the Attorney General to invoke the provisions of such section," (iii) "the application of such section to individual aliens, including the [credible fear] determination made under section 1225(b)(1)(B)"; and (iv) "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)." *Id.* (emphasis added).

Furthermore, subsection 1252(e)(1)(A) provides that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." Subsection 1252(e)(2) then provides for circumscribed judicial review of three discrete issues Plaintiffs do not present in the instant action: (1) "whether the petitioner is an alien;" (2) "whether the petitioner was ordered removed" under 8 U.S.C. § 1225(b)(1); and (3) whether the alien can demonstrate that he had been admitted to permanent residence or granted asylum prior to his expedited removal, such status having not having been terminated. Moreover, in conducting review under section

17

1252(e)(2), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.* at § 1252(e)(5). And even if some basis for review exists under section 1252(e)(2), "the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title." *Id.* at § 1252(e)(4)(B). Although section 1252(e) provides for review in limited circumstances, as described above, even where review is permitted, the subsection prohibits the entry of a stay of removal such as is being requested here.

For all of the above reasons, this Court has no jurisdiction to review the merits of Mr. A.'s negative credible fear determination and expedited removal order. Likewise, the Court has no jurisdiction to order that Mr. A. receive a *de novo* credible fear interview or stay his removal on a permanent basis.[14]

## III.    The Balance Of Hardship And The Public Interest Require That Mr. A. Not Receive Special Treatment

The remaining factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

At base, Mr. A. seeks special treatment under immigration laws here.  Mr. A. asks that this Court grant him relief  - either by releasing him from custody or allowing additional asylum screenings  - that are otherwise unavailable to him.  Mr. A.'s extraordinary requests gloss over

---

[14]    The January 3rd Order temporarily enjoins the government from removing Mr. A. until further order from the Court. *See* ECF No. 9

the fact that he has a removal order.  Gov. Exh. B (Removal Order).  To be clear, at this point,

Mr. A's gang affiliation is marginally relevant at best because he is currently held due to the final

removal order.  Furthermore, the children are no longer in the government's custody.  Therefore,

Mr. A.'s requests also ignore the public interest in carrying out final orders of removal and the

maintenance of expedited removal for persons arrested when they entered the U.S. illegally.

## IV.    Injunctive Relief Will Cause Irreparable Harm To The Government

Mr. A. argues that he will face irreparable harm if removed from the U.S. and that a "brief

pause in removal proceedings" will cause little harm to the government. PI Mot. at 23.  This

argument misses the point.  The irreparable harm accrued by the government is when this Court

enjoins a government entity, such as ICE, from enforcing statutes enacted by the duly elected

representatives of the people.  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345,

1351 (1977).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Mr. A.'s

motion for injunctive relief and vacate its January 3rd Order.

February 12, 2019                              Respectfully submitted,

                                               JESSIE K. LIU
                                               D.C. BAR # 472845
                                               United States Attorney

                                               DANIEL F. VAN HORN
                                               D.C. BAR # 924092
                                               Chief, Civil Division

By:      _____//s_____
         JOHN C. TRUONG
         D.C. BAR #465901
         Assistant United States Attorney
         555 4th Street, N.W.
         Washington, D.C. 20530
         Tel: (202) 252-2524
         E-mail: John.Truong@usdoj.gov
         Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Mr. A., an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No.: 19-0015(PLF) |
| | § | |
| U.S. IMMIGRATION AND CUSTOMS | § | |
| ENFORCEMENT, ET AL., | § | |
| | § | |
| Defendants. | § | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Preliminary Injunction Motion and Defendants'

Response thereto, and the entire record herein, it is this _____ date of _____, 2019,

**ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED,** and it is

**FURTHER ORDERED** that the January 3, 2019 Order staying the removal of Mr. A.

from the United States is **VACATED**.

**SO ORDERED**.

_____
United States District Judge

21