**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Mr. A., an individual, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil No.: 19-0015(PLF) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL., | § § § § | |
| Defendants. | § § | |

I, Mellissa Harper, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as subject matter experts on juvenile and family matters in their respective field offices. As JFRMU advises FOJCs, they in turn, advise their fellow officers who encounter minors during enforcement activities.

2. The statements in this declaration are based on information obtained and reviewed by me in performance of my official duties, information provided to me by employees under my supervision, and/or my review of information contained in the other appropriate records.

3. Currently, ICE oversees three family residential centers (FRC): 1) the Karnes Family Residential Center (Karnes) is located in Karnes City, Texas, and can house up to 830 total individuals; 2) the South Texas Family Residential Center at Dilley (Dilley), located in

Dilley, Texas, can house up to 2,400 individuals; 3) the Berks County Residential Center (Berks), in Berks County, Pennsylvania, can house up to 96 individuals.

4.  ICE family residential facilities house non-criminal, non-violent family groups consisting of adult alien parents and/or legal guardians (parents) and their alien minor child(ren). Children in these family groups can range in age from newborn to 17 years of age. While the goal of ICE's Family Residential Centers (FRCs) is to maintain family unity wherever possible, there may be instances when after placement in a FRC, families must be separated due to circumstances beyond ICE's control. These instances include, but are not be limited to acute resident medical conditions, allegations of physical abuse/violence, or when certain residents become otherwise ineligible for housing in a residential setting, etc. Thus, in accordance with the *Flores Settlement Agreement* and best practices, in all such instances the best interest of the child must be considered when contemplating family separation.

5.  FRC operate under the ICE Family Residential Standards (FRS).[1] The FRS promote a unique, non-secure, open-movement environment which permits parents and children to live in a dorm-like environment with access to education, recreational opportunities and health care on site. The FRS were developed with input from medical, psychological, and educational subject matter experts and various organizations such as the DHS Office of Civil Rights and Civil Liberties (CRCL) and many non-governmental organizations (NGOs).

6.  Family units have freedom of movement throughout FRC during daytime hours. Residents have access to libraries, recreational facilities, and playrooms. The focus of FRC is to have an environment that encourages family health and safety by providing child-friendly amenities and services in an environment that is conducive to healthy family interactions.

---

[1] https://www.ice.gov/detention-standards/family-residential (last visited on Feb. 10, 2019).

Families interact with each other throughout the day. FRC are staffed with contracted Resident Advisors in lieu of security officers.

7. Due to need to protect other residents, the low-security environment and demanding state licensing restrictions governing family detention at FRCs, ICE does not house criminals or individuals with known gang affiliation in these facilities. Because of the open movement of these facilities, housing convicted criminals or individuals who have a history of unlawful activity, such as affiliation with gangs, presents an unacceptable risk of harm to the other families residing at FRC. Physical violence, threats, youth recruitment and other dangers would greatly diminish the safety of the residents in these facilities, many of whom have asylum claims based on MS-13 gang violence.

8. The safety of residents at FRC is also a legal obligation. Under the *Flores Settlement Agreement*, ICE must ensure the safety and well-being of all minors in its custody, including those housed with their parents at FRC.[2]

9. In addition, FRC's operate under rigorous state licensing restrictions, and must requalify annually, and are subject to surprise inspections by state regulators to ensure compliance. On November 28, 2018, the Texas Court of Appeals, Third Circuit, issued a decision reinstating the licensing regulations that apply at the Karnes Family Residential Center (Karnes) located in Karnes City, Texas, and the South Texas Family Residential Center at Dilley (Dilley), located in Dilley, Texas.[3] As a result, these family residential centers (FRC) must comply with all the licensing requirements of the state of Texas. Included in these requirements are strict background

---

[2] *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (finding terms of the Flores Settlement Agreement applied to accompanied minors).

[3] *Texas Dep't of Family and Protective Servs.* (DFPS) v. *Grassroots Leadership, Inc.*, No. 03-18-00261-CV (Tex. Ct. App. 3d Dist. Nov. 28, 2018).

3

check requirements and prohibitions on criminal individuals living, visiting or working at such licensed facilities.[4] The Berks Family Residential Center (Berks), located in Pennsylvania, is currently also subject to licensing requirements that limit who can reside at this FRC. [5]

10. FRCs also have individual housing criteria to ensure the safe function of the facility. Dilley and Karnes do not accept individuals who have gang affiliation. Berks does not accept any criminal residents or residents with gang affiliations with the exception of minor, non-violent convictions on a case-by-case basis.

11. Gang members or associates often engage in violent or threatening acts against individuals they perceive as threats. Moreover, gangs, especially those from Central America, are notorious for recruiting children by means of violence or intimidation. ICE cannot risk the chance that a child may be subject to or witness any such activity at a FRC. Moreover, many FRC residents are seeking asylum on the basis of gang violence. ICE cannot subject FRC resident families to potential trauma by housing a gang member.

12. FRC are non-secure and have doors that do not lock for purposes of egress. Residents at FRC are not escorted under guard and have freedom of movement. If a resident wishes to leave, employees are instructed to allow them to do so. Consequently, FRC are not appropriate option for individuals that are a high flight risk because of gang affiliations and Final Orders of Removal.

13. I reviewed the available documents and electronic records in this case. This review revealed that Mr. A was apprehended by U.S. Customs and Border Protection near Abram, Texas

---

[4] *See* Ch. 745, Subchapter F, Background Checks, of the Texas Minimum Standard for General Residential Operations.
[5] *In the Appeal of Berks County Residential Center*, Docket No. 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 (Commonwealth of Pennsylvania Department of Human Services, Bureau of Hearings and Appeals filed November 23, 2015); *see also* 55 Pa. Code § 3800.

on November 2, 2018, at approximately 10:20 pm by McAllen Station Border Patrol Agents. At the McAllen Station, record checks revealed that Mr. A had a documented affiliation with MS-13 in El Salvador. This information was entered into U.S. government databases by the U.S. Department of State and local U.S. Federal Bureau of Investigation operating in El Salvador. After Mr. A. was transferred into ICE custody, on Tuesday, November 13, 2018, ICE-ERO contacted the Assistant Attaché for Removals and local investigator to confirm that the documented affiliation is still valid.  ICE received additional documentation confirming the information entered by the FBI gang task-force in El Salvador.

15.    Mr. A. poses a significant flight risk because he has been determined to be affiliated with the MS-13 gang. His Credible Fear hearing was "negative." Mr. A.'s case was also reviewed by an Immigration Judge who affirmed the Credible Fear finding. Finally, as of December 17, 2018, Mr. A. has been issued a final removal order, and, but for the Order of this court, Mr. A would be scheduled for removal.

16.    Mr. A. is not an appropriate candidate to be housed at an FRC because he presents a potential danger to other FRC residents and a significant flight risk.

17.    Alternatives to detention (ATD) is not an appropriate placement for Mr. A because he is a significant flight risk and a danger to the community. When ICE deems an individual to be a danger to the community, ATD is not considered because this program is not intended to prevent criminal or violent activity. Simply put, ATD does nothing to mitigate the danger to the community. Moreover, Mr. A. is subject to a final order of removal, so he is a significant flight risk.

18.    ICE also has obligations under the ICE Parental Interests Directive to respect

parental rights.[6] Based on these parental rights, ICE may coordinate reunification with children who are no longer in ICE custody for purposes of removal so long as the children's sponsor agrees. If a child is in custody of the Office of Refugee Resettlement (ORR) this requires coordination with Health and Human Services; if the child is no longer in HHS/ORR custody, this requires coordination with the child's parental sponsor. ICE has no authority to order a parental sponsor to return custody to a parent being removed, the mother will also have to agree that this is in the best interest of her children and cooperate with ICE and HHS to facilitate reunification.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11 day of February 2019.

_____
Mellissa B. Harper
Chief, Juvenile and Family Residential Management Unit
U.S. Immigration and Customs Enforcement

---

[6] https://www.ice.gov/doclib/detention-reform/pdf/directiveDetainedParents.pdf (last visited Feb. 10, 2019).