**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Mr. A, an individual, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:19-CV-00015 |
| | § | |
| U.S.   IMMIGRATION   AND | § | |
| CUSTOMS ENFORCEMENT *et al*, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

SUPPLEMENTAL FACTUAL BACKGROUND ................................................. 2

    I.      Developments Regarding Custody of Mr. A's Children ..................................... 2

    II.     Additional Evidence of Mr. A's Lack of Gang Affiliation or Criminal History ................................................................................................ 4

    III.    Mr. A's Status .................................................................................. 4

ARGUMENT ...................................................................................................... 5

    I.      The Court Has Jurisdiction over Mr. A's Claims ................................................ 5

    II.     Mr. A is Entitled to a Preliminary Injunction ........................................................ 6

         A.     Mr. A has Demonstrated a Likelihood of Success on the Merits. ............. 6

         B.     Public Interest Requires Mr. A Receive Lawful Treatment. ................... 12

         C.     Being obligated to follow the Constitution cannot cause irreparable harm to the government. .......................................................... 13

    III.    Injunctive Relief is Appropriate Here. ................................................................. 13

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)..........................................................................11

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012)..........................................................................12

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)..................................................12

*de Nolasco v. United States Immigration & Customs Enf't*, 319 F. Supp. 3d 491
    (D.D.C. 2018) ...........................................................................................................5, 13

*\*Doe v. U.S. Dep't of Homeland Sec.*, 4:18-cv-02389, 2018 U.S. Dist. LEXIS
    116901 (S.D.Tex. July 13, 2018)..................................................................6, 11, 13, 15

*Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1 (D.D.C. 2015) ...................................6

*Farrell v. Tillerson*, 315 F. Supp. 3d 47 (D.D.C. 2018) .................................................................9

*Franz v. United States*, 707 F.2d 582 (D.C. Cir. 1983) ..................................................................7

*Grace v. Whitaker*, 244 F.Supp.3d 96................................................................................4, 14, 15

*Grace v. Whitaker*, No. 1:18-cv-01853 (EGS) Dkt. 105 (Dec. 19, 2018 Order) ...........................14

*Halet v. Wend Inv. Co.*, 672 F.2d 1305 (9th Cir. 1982)...................................................................7

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001)...........................................................................................14

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) .....................................12

*M.G.U. v. Nielsen*, 325 F. Supp. 3d 111 (D.D.C. 2018) .................................................................6

*M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526 (S.D. Cal. 2018) .........................13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463
    U.S. 29 (1983)........................................................................................................................9

*\*Ms. L. v. U.S Immigration & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal.
    2018) ................................................................................................................... *passim*

*\*Ms. Q. v. United States Immigration & Customs Enf't*, Civ. A. No. 18-2409,
    2018 U.S. Dist. LEXIS 204758 (D.D.C. December 4, 2018)................................................5, 9

*P.L. et al., v. U.S. Immigration and Customs Enforcement, et. al.*, Case No. 1:19-
    cv-01336-ALC (S.D.N.Y.) Dkt. 2 (Feb. 12 Complaint) ........................................................10

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ....................................................12

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ................................................13

*Ramirez v. U.S. Immigration & Customs Enforcement*, 338 F. Supp. 3d 1 (D.D.C. 2018) ..........................................................................................................................11

*Rodriguez v. Robbins*, 715 F.3d 1127 (2013) ..............................................................13

*Rodriguez-Quiroz v. Lynch*, 835 F.3d 809 (8th Cir. 2016) ............................................8

*Schnitzler v. U.S.*, 761 F.3d 33 (D.D.C. 2014)..............................................................11

*Souza v. Sessions*, 1:18-cv-04412 (N.D. Ill. June 28, 2018)..........................................6

*Stanley v. Illinois*, 405 U.S. 645 (1972)........................................................................7

*Sze v. I.N.S.*, 153 F.3d 1005 (9th Cir. 1998) ................................................................12

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S. Ct. 361 (2018)...................14

## Other Authorities

8 C.F.R. § 208.30..................................................................................................10, 11

Fed. R. Civ. P. 12....................................................................................................1, 5

In further support of Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion"), Plaintiff respectfully shows as follows:

## INTRODUCTION

Mr. A and his two minor children fled his home country of El Salvador and entered this country on November 2, 2018. Shortly thereafter, Defendants accused Mr. A of having gang affiliations and a criminal background.[1] Mr. A vigorously disputed these allegations and presented evidence that they were false, but on November 5, 2018, Defendants took Mr. A's minor children from him while he was at a hearing. He has not seen them since.

After his children were taken from him, Mr. A was deeply anguished and depressed. Since he has been separated from his children, Mr. A's mental, physical, and emotional health has rapidly deteriorated. Defendants persuaded the despondent Mr. A him to sit for his credible fear interview ("CFI") without representation. Since the separation, Defendants have pressured Mr. A to sign a designation letter requiring him to assign Ms. M as the children's custodian, despite plaintiff's counsel's request that DHS and Immigration and Customs Enforcement ("ICE") refrain from pressuring Mr. A to sign the designation letter. Dkt. 22-2 (January 10, 2019 Letter to Counsel). Subsequently, Defendants began pressuring Mr. A's estranged wife Ms. M to take custody of the children (whom she had not seen in nearly four years), including by mischaracterizing the actions

---

[1]   In Defendants' Response to Plaintiff's Motion for Preliminary Injunction (Dkt. 29, "Response"), Defendants allege that Customs and Border Protection ("CBP") was the agency that initially determined that Mr. A was a gang member. *See* Dkt. 29 at pp. 2–3. Defendants also point out that CBP is not a party to this litigation. *Id.* However, CBP is part of Defendant Department of Homeland Security ("DHS") and is under the control of and acts at the direction of DHS officials, including Defendant Nielsen. Defendants have submitted an affidavit from a CBP employee, suggesting they can obtain the information they believe necessary to their defense. Moreover, while Defendants state that CBP's initial determination that Mr. A is a gang member is the nominal reason for Defendants' subsequent actions, it is Defendant's actions (and refusal to afford due process to Mr. A) which are the subject of this litigation. To the extent the Court believes that CBP is an essential party under Federal Rule of Civil Procedure 12(b)(7), Plaintiff respectfully requests leave to amend his pleading.

and status of Mr. A.  On February 5, 2019, Defendants released Mr. A's minor children to the custody of his estranged wife.   Now, after orchestrating a forcible reunification with a noncustodial parent over the objections of both parents, Defendants argue that Mr. A's right to reunification is somehow mooted.  Not so.  The presence of the children's mother does not remove Mr. A's right as a father to family unity.  It also does nothing to ameliorate the constitutional due process problems that invalidated his credible fear interview.  Therefore, Mr. A respectfully submits that his claims have not been mooted, and he is entitled to the relief he seeks.

## SUPPLEMENTAL FACTUAL BACKGROUND

Plaintiff provided factual background on this matter in his Motion for a Temporary Restraining Order (Dkt. No. 4, the "Motion"), which was filed on January 3, 2019.  Since that time, there have been material factual developments.  In order to update the Court on these new developments, Plaintiff submits the following supplemental factual background:

## I.      Developments Regarding Custody of Mr. A's Children

1.      Nearly four years ago, Ms. M, Mr. A's wife, moved from El Salvador to the United States, leaving the children with Mr. A.  Mr. A had full physical and legal custody of their children. Although Mr. A and Ms. M have kept in touch by phone, Ms. M had not seen Mr. A or the children since she left El Salvador.

2.      After Defendants forcibly separated Mr. A from his children, they placed his children in a shelter.  Before and since Mr. A filed this action, the shelter responsible for Mr. A's children has repeatedly pressured Mr. A's estranged wife Ms. M to take custody of their children. Although Ms. M provided her information to the shelter to be considered as a sponsor, she repeatedly told the children's advisor, known to her as Alexander, that she wanted the children to be reunited with their father. Ex. A at ¶ 19.

3.      Shelter representatives have made false or misleading statements to Ms. M to pressure her to accept custody of the children.  For example, Ms. M understood from Alexander that Mr. A was going to be deported in mid-January 2019 and that family reunification was not possible.  Ex. A at ¶ 23.

4.      However, Alexander knew or should have been told by Defendants that Mr. A's deportation was stayed by Order of this Court on January 3, 2019.  Dkt. 9.

5.      Mr. A was also being pressured to sign a designation letter to release the children to Ms. M.  On January 7, 2019, Plaintiff's counsel sent a letter to ICE San Antonio Field Office and the Webb County Detention Center requesting that the deportation officers desist from pressuring Mr. A to sign a designation letter.  Ex. C, D; *see also* Dkt. 22-2 (January 10, 2019 Letter to Counsel).

6.      Although Ms. M loves her children, she told the shelter that both she and the children wanted the children to be with their father, who has had exclusive custody of them for nearly four years.  Ex. A at ¶ 21; 35; 41.  However, on Monday, February 4, 2019, Ms. M was suddenly informed that the children would be released to her custody the following day.  Ex. A at ¶ 27.[2]

7.      Ms. M told the shelter that she wanted her children reunited with their father.  Ex. A at ¶ 28.

8.      Ms. M was again told that Mr. A was being deported and that reunification was no longer possible.  Ex. A at ¶ 29.

---

[2]     This sudden release was effected without notice to Mr. A or his counsel, and upon information and belief, without notice to counsel for Mr. A's children, Monika Graham, of the Refugee and Immigrant Center for Education and Legal Services (RAICES).

9.      Ms. M was told her children would arrive in the city where she lives the following morning, and that she was to be there to receive them.  Ms. M then received a phone call from the shelter demanding that she pay over two thousand dollars for plane tickets for the children and a chaperone.  Ex. A at ¶ 30–31.

10.     Even after the children were released from detention, the frightening misinformation continued—a week later, Ms. M was contacted by the shelter and told (incorrectly) that Mr. A had been deported and that he had signed a form authorizing the children to be deported with him.  Ex. A at ¶ 36.  Ms. M was asked whether she wanted her children to be deported with their father.  *Id.* at ¶ 37.

11.     Ms. M understands her children still want to be with their father.  Ex. A at ¶ 41.

## II.      Additional Evidence of Mr. A's Lack of Gang Affiliation or Criminal History

1.      During the pendency of the Motion, Plaintiff also learned that Mr. A's mother ("Mrs. A") has worked tirelessly to obtain any evidence available in El Salvador regarding Mr. A's purported criminal record or lack thereof.  Ex. B. Mrs. A visited multiple government offices, and confirmed her son had no criminal record that the officials could identify.  Ex. B. When Mrs. A asked, she learned there is an individual with the same first name, first surname and birthdate in a criminal registry; however, that individual does not have the same full biographical data as Mr. A because he has different parents (and therefore a different second surname). Ex. B.

## III.     Mr. A's Status

1.      In the six weeks since Mr. A filed this action, his health has continued to deteriorate. Mr. A has bone pain, constant diarrhea, and migraines. Mr. A's hair is falling out in chunks, he has difficulty sleeping and suffers from depression. Dkt. 22-4.  For the first time in his life, Mr. A has sought mental health treatment.  *Id.*

2.      Mr. A made two requests for reconsideration of his negative credible fear determination, relying on the District Court's decision in *Grace v. Whitaker*, regarding *Matter of A-B.* Both requests were denied.

3.      Mr. A remains in detention, separated from his children.  After caring for them as a single parent for nearly four years, he has now been separated from them for over 100 days.

## ARGUMENT

### I.      The Court Has Jurisdiction over Mr. A's Claims

Defendants argue the Court has no jurisdiction to hear this matter by asserting that Mr. A has made claims he has not made.  First, Defendants state that the Court does not have jurisdiction over Mr. A's "habeas claim." Dkt. 29 at p. 4.  Defendants tangentially acknowledge that Mr. A has not brought a habeas claim but improperly argue that his claim "actually" is a habeas claim.[3] This is belied by the pleadings, which plainly show that Mr. A seeks redress for violation of his constitutional due process rights. Second, Defendants state that the Court cannot order ICE to release Mr. A.  Mr. A has not requested the Court order ICE to parole Mr. A—to the contrary, he has only sought reunification with his children.[4]

Despite these strawman arguments, the Court has jurisdiction to address the claims Mr. A has actually made.  In the past year, this Court has asserted jurisdiction over claims for due process

---

[3]    To the extent the Court is inclined to treat Defendant's comment as a Motion under Federal Rule of Civil Procedure 12(b)(3), Plaintiff respectfully requests notice and an opportunity to respond.  Plaintiff maintains that venue is proper in this Court, as stated more fully at Dkt. 1 at pp. 3–4.

[4]    When Mr. A first requested reunification with his children, they were still in Defendants' custody.  Defendants only recently released the children to their estranged mother (despite the objections of both parents).  Defendants are essentially arguing now that their unilateral actions have stripped the Court of jurisdiction to remedy the very harm they caused—the unjustified separation of Mr. A and his children—because reunification is administratively more difficult. Defendants cannot rely on an administrative issue of their own making to deprive this Court of jurisdiction.  In any event, parole is not the only way that Mr. A can be reunited with his children.

violations stemming from forced family separation in multiple cases. *See Ms. Q. v. United States Immigration & Customs Enf't*, Civ. A. No. 18-2409, 2018 U.S. Dist. LEXIS 204758, *4 (D.D.C. December 4, 2018); *de Nolasco v. United States Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 49l (D.D.C. 2018); *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 117 (D.D.C. 2018).  Additionally, courts have repeatedly held that district courts have jurisdiction in cases such as this one, where a plaintiff alleges constitutional due process violations, but does not directly challenge his or her order of removal. *See e.g., Ms. L.*, 302 F. Supp. 3d 1149, 1160 (S.D. Cal. 2018); *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 117 (D.D.C. 2018); *see also Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1, 6–8 (D.D.C. 2015) (district court exercised jurisdiction to examine the merits of petitioner's claim that removal proceedings were procedurally defective).

## II.      Mr. A is Entitled to a Preliminary Injunction

### A.      Mr. A has Demonstrated a Likelihood of Success on the Merits.

#### 1.      Mr. A is entitled to constitutional protections.

Defendants incorrectly suggest that Mr. A is not entitled to due process.[5]  Dkt. 29 at 16–17.  It is well-established that asylum seekers are entitled to due process, including in expedited removal proceedings.  *See, e.g., Ms. L.,* 302 F. Supp. 3d at 1165 (S.D. Cal. 2018) (finding the constitutional right to family integrity applies to asylum-seekers). Mr. A has the ability to bring a constitutional claim based on defects in the process afforded to him.  *Souza v. Sessions*, 1:18-cv-04412, (N.D. Ill. June 28, 2018) (finding that a mother and son, both asylum seekers, were entitled to immediate reunification because "[a]mong the liberties protected by the due process clause is

---

[5]    Defendants do not suggest that Mr. A does not have the right to be free from cruel and inhumane treatment like forced family separation.  Plaintiff renews its arguments, that Defendants do not address, that forced family separation shocks the conscience and is a violation of substantive due process.  *Ms. L. v. U.S Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) (facts alleged by plaintiffs, which showed government conduct violating the constitutional right to family integrity, shocked the conscience).

the right of parents to the custody of their children"); *Doe v. U.S. Dep't of Homeland Sec.*, 4:18-cv-02389, 2018 U.S. Dist. LEXIS 116901 at *2 (S.D.Tex. July 13, 2018) (finding that government defendants had deprived an asylum seeker in expedited removal proceedings "of her constitutional rights" by using forced separation from her child to pressure her into sitting for an unrepresented CFI and then waiving her right to judicial review, and ordering family reunification, judicial review of the CFI, and all further process to which the asylum seeker was entitled).

### 2. These constitutional protections were denied when Mr. A's children were forcibly taken from him with no process.

The government may not separate a parent from his child absent a clear showing that the parent is a threat to the child's safety. *See Stanley v. Illinois*, 405 U.S. 645, 652 (1972) ("What is the state interest in separating children from fathers without a hearing designed to determine whether the father is unfit in a particular disputed case?"). In recognition of a father's fundamental liberty interest in parenting his children, courts allow the government to separate a child from his parent only under extreme circumstances. *See Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1310–11 (9th Cir. 1982) (requiring a compelling interest to deprive parents of their "fundamental right" to "live with their children"). The "[s]everance of the relationship between a parent and his child can survive constitutional scrutiny" only if: (i) the government's interest is compelling; (ii) there is a "particularized showing" that terminating the parental relationship promotes the state's interest; (iii) it is "impossible to achieve the goal in question through any means less restrictive"; and (iv) the parties are afforded procedural due process rights. *Franz v. United States*, 707 F.2d 582, 602 (D.C. Cir. 1983). Due process serves the function of "reduc[ing] the likelihood of error—i.e. the risk that the government will act on the basis of what, in reality, is an insufficient justification. *Id.* at 608 (describing due process as notice and an opportunity to be heard).

Mr. A was afforded no process at all when his two children were forcibly taken from him.

Even now—more than three months later and after Defendants have filed a response in this matter—all that is known is that two unnamed employees or agents of Defendants allegedly determined that Mr. A was a criminal or gang affiliate after consulting two databases and seeking unspecified additional documentation.  Defendants have failed to produce copies of any of the materials on which these individuals purportedly relied, and have not considered (and appear to have no answer for) any evidence to the contrary provided by Mr. A.  Dkt. 29 at 13; Dkt. 4 Ex. 5.  As a result of this nebulous series of events, undertaken by unknown individuals reviewing unknown documentation, Mr. A's children were taken from him and have been kept from him.  This is not notice and an opportunity to be heard.

It is telling that Defendants have failed to produce any direct evidence regarding their allegation that Mr. A is a gang member in connection with their response.  Instead, Defendants have produced declarations from individuals who were not involved in the determination that Mr. A is a gang member and, in the case of Mr. Alvarado, have not even reviewed the documentation that allegedly supports that determination.  *See* Alvarado Decl. ¶¶ 8–9; Harper Decl. ¶ 14.  Defendants have also refused to provide Mr. A with copies of the documentation they allegedly relied on in determining he is a gang member, *see* Dkt. 22-2, and failed to include that documentation with their response.  As a result, neither the Court nor Mr. A can assess the validity or strength of the purported evidence.  Additionally, Defendants' Response and Declarations do not state that the government reviewed or even considered the evidence that Mr. A and his counsel supplied multiple times regarding his lack of criminal history.  Dkt. 4 Ex. 3; Dkt. 4 Ex. 5.  This remarkably thin showing is insufficient to meet the government's burden to show that the decision comports with due process, when the stakes involve a lengthy and possibly permanent separation from his children.  This is particularly egregious here, where Mr. A has argued that Defendants

have mistaken him for someone else and provided evidence to support that.  The Eight Circuit recently set aside evidence contained in a TECS-II document because the presumption of reliability was rebutted by a countervailing showing by the plaintiff.  *Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 820 (8th Cir. 2016).  Here, the Plaintiff has made a countervailing showing and the alleged documents are not even before the court—the contents of the purported documents should be disregarded.

Defendants suggest that their determination that Mr. A is a criminal is owed "deference."  Dkt. 29 at 12.  However, the Order Defendants rely upon was predicated on the Court also finding that, with respect to the subject individuals Defendants exercised discretion in a "reasonable" manner, vetted the parents in "good faith" and made "principled decisions."  *Ms. L,* Case No. 18 cv 0428 (DMS), Dkt. 236 (Sept. 19, 2018 Order on Reunification of Ms. Q and Mr. C) at 3.[6]  Here, the evidence put forth by Defendants does not show such august deliberation, and does not show due process, and their determination should not be afforded deference, especially in light of the ample countervailing evidence.

### 3.      Separation of Mr. A from his family did not comply with the APA

By forcibly separating Mr. A from his children, Defendants violated his constitutional rights to family integrity and due process.  Agency action in violation of the Constitution violates the Administrative Procedure Act ("APA").  *Farrell v. Tillerson*, 315 F. Supp. 3d 47, 70 (D.D.C. 2018).  Separate from the constitutional violation, however, the decision to separate Mr. A and his children did not comply with the APA.   "[T]he agency must examine the relevant data and

---

[6]   This Order also notes that Defendants took the position that minor criminal history would not exclude a parent.  Further of note, this Order applied to two individuals—Mr. C, who had a serious criminal <u>conviction</u>, and Ms. Q, whose criminal background was found to be unsubstantiated by an immigration judge and who was later reunified with her child by order of this Court.  *See Ms. Q,* 1:18-CV-02409-PLF Dkt. 26 (Nov. 27, 2018 Order).

articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, [the court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations and quotations omitted).  As described above, the agency ignored information presented by Mr. A.  Further, while the agency stated that it consulted with official sources in El Salvador, when Mr. A's mother consulted with governmental agencies in El Salvador she received confirmation that her son did not have a criminal record, and the additional valuable information that a person with a similar name does have a criminal record.  *Compare* Harper Decl. at ¶ 14; Ex. B at p.1. The description of the agency's process does not show examination of relevant data contemporaneous to the decision, and does not articulate a rational connection between the facts found and the choice made.  For the foregoing reasons, Mr. A is likely to succeed on the merits of his APA claim related to family separation.

## 4. Mr. A's Credible Fear Interview Did Not Comport with the Constitution or the APA

Further, Mr. A's Credible Fear Interview did not comport with the APA because it did not comport with the statutory requirements or due process.  Vulnerable from the trauma of forced family separation, Mr. A was told his lawyer was unavailable and was pressured to proceed with what Mr. A believed was the only chance he would be given at asylum proceedings.  Dkt. 4 Ex. 5.; *see also* 8 C.F.R. § 208.30(d)(4) (alien may consult with a person or persons of alien's choosing; such person may be present at the interview).[7]   As Immigration Judge Morris Onyewuchi

---

[7]   Although Mr. A was represented by counsel in his hearing before the Immigration Judge, the representation was carried out by videoconference.  This technology poses serious limitations on counsel and applicants and has been challenged by Brooklyn Defender Services, the Legal Aid Society and others in a class-action litigation commenced February 12, 2019 in the Southern District of New York.  *P.L. et al., v. U.S. Immigration and Customs Enforcement, et. al.,* Case No.

recognized when he was asked to review the credible fear determination of a separated parent, he could not "conduct a meaningful review that comports with Constitutional Due Process to a fair trial [because] [t]he Respondent is under severe emotional disturbance due to lack of information about the location of her child." Ex. E.  Judge Onyewuchi returned the matter to the Department of Homeland Security "to address the reunification concerns implicated" in that matter.  *Id.* Mr. A is in the same position as the applicant before Judge Onyewuchi was—and deserves the same consideration.   Similarly, the Court in *Jane Doe* noted plaintiff had been deprived of her constitutional rights, and ordered that the plaintiff be provided with family reunification and review by an immigration judge.  *Doe v. United States Dep't of Homeland Sec.,* 2018 U.S. Dist. LEXIS 116901, *3.  Mr. A has repeatedly raised the problem that his trauma prohibited effective participation in his credible fear interview.[8]  The due process violation of taking away his children indelibly colored what happened after, and therefore Mr. A's Credible Fear Interview also did not comport with the APA.

### 5.        Mr. A's Claims are Not Moot.

Defendants now argue that because Mr. A's children have been released from the detention center and into the custody of their estranged mother, Mr. A's reunification claim is moot.  That is incorrect.  "A case is moot when a party has already obtained all the relief that it has sought." *Ramirez v. U.S. Immigration & Customs Enforcement*, 338 F. Supp. 3d 1, 32 (D.D.C. 2018) (quoting *Schnitzler v. U.S.*, 761 F.3d 33, 37 (D.D.C. 2014)); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy'

---

1:19-cv-01336-ALC (S.D.N.Y.) Dkt. 2 (Feb. 12, 2019 Complaint) at ¶¶ 87–97 (describing government reports admitting the inadequacy of video conferencing during immigration proceedings).

[8]    Mr. A's appeal of the negative credible fear finding also raised the issues that the IJ review was not timely provided, in contravention of the statutory requirements, and that failure to comply with the statutory timing resulted in a due process violation. *See* Dkt. 4-1.

for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"").  Here, since Mr. A has not been reunited with his children, he has not obtained the relief he has sought.

Moreover, even if Defendants' release of the children to their mother's custody *could* render Mr. A's reunification claim moot, it would not here because Defendant's release of the children (less than two weeks ago) would fall under the voluntary cessation exception to the mootness doctrine.  The voluntary cessation doctrine provides that the "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982).  Thus, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.*  Additionally, this doctrine requires that "the voluntary cessation must have arisen because of the litigation." *Ms. L. v. U.S Immigration and Customs Enforcement*, 302 F. Supp. 3d 1149, 1157 (S.D. Cal. 2018) (quoting *Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998)).  Because Defendants have not provided any evidence that the children were released from detention and reunited with their estranged mother for reasons other than this litigation, the voluntary cessation exception should apply to this case.  While the voluntary cessation exception requires a showing that there is a reasonable expectation that the alleged wrong will be repeated, *Sze*, 153 F.3d at 1008, here, the alleged wrong has never, in fact, been resolved.  Mr. A has not been reunited with his children.  For the foregoing reasons, Mr. A's claim for reunification is not moot.

### B.      Public Interest Requires Mr. A Receive Lawful Treatment.

Contrary to Defendants' suggestion that Mr. A is requesting special treatment, Mr. A is only requesting constitutionally-sound treatment.  This is not "special"—it is the bare minimum.  Nowhere has Mr. A requested that the government be prevented in any way from enforcing the immigration laws.  "It is always in the public interest to prevent the violation of a party's

constitutional rights.'" *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

### C.  Being obligated to follow the Constitution cannot cause irreparable harm to the government.

Nothing in Plaintiff's prayer seeks to enjoin any Defendant agency from enforcing the law. Quite the opposite—Plaintiff's prayer seeks only to ensure he receives a lawfully-administered asylum proceeding. The relief requested here would cause no injury to Defendants, since a government agency "'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (2013)); s*ee also M.M.M. on Behalf of J.M.A. v. Sessions*, 347 F. Supp. 3d 526, 536–37 (S.D. Cal. 2018) (holding that the "public interest in preventing aliens from being wrongfully removed" outweighed the government's interest in prompt execution of removal orders).

### III.  Injunctive Relief is Appropriate Here.

Mr. A seeks to be restored to the moment before his rights were violated.  He is not seeking special treatment, or assurance of a particular outcome.  All Mr. A wants is to access the asylum process, unimpaired by the trauma inflicted by the unconstitutional family separation he has been subjected to.  Reunification, and a new Credible Fear Interview, would put Mr. A back to the last uncontested status quo before the violation of his rights.  *See Jacinto-Castanon de Nolasco v. United States Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 498 (D.D.C. 2018) (granting a motion for a preliminary injunction to reunite a family separated by the "zero tolerance" policy,

finding that "every day of separation is causing serious and potentially permanent harm"); *see also Doe v. United States Dep't of Homeland Sec.,* Civ. A. No. 4:18-cv-02389, 2018 U.S. Dist. LEXIS 116901, *2 (S.D. Tex. July 13, 2018).   Defendants argue that the Court would be required to order Mr. A's parole in order to effect reunification, but this rings hollow.  Defendants are arguing that by releasing the children they have tied their own hands and cannot now remedy the violation of Mr. A's constitutional rights.  Defendants' Response and supporting declarations describe multiple locations and forms of detention from family detention to ankle-bracelet monitoring.  Dkt. 29 at 2–3; Alvarado Decl. at ¶ 11n.3; Harper Decl. ¶¶ 10–17.  By Defendants' own indication, parole is not the only option for family reunification.  Reunification, however, is the only remedy to the violation of Mr. A's right to family integrity.

Defendants also argue that the Court is without the power to order a new Credible Fear Interview.  There exists a "strong presumption in favor of judicial review of administrative action." *I.N.S. v. St. Cyr*, 533 U.S. 289, 289 (2001). The Supreme Court has described the danger in "legal lapses and violations" that occur and has therefore found a "strong presumption favoring judicial review of administrative action" to limit such risk. *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S. Ct. 361, 370 (2018).  Mr. A's first CFI occurred during acute trauma, namely the trauma of forced separation from his children.  Because Defendants treated the unconstitutional separation as a condition precedent to continuing with his asylum proceeding, by refusing to reunite him with his children pursuant to his counsel's November 5, 2019 request, Defendants integrated the constitutional violation with the CFI process. Perhaps recognizing this, Defendants consented to provide new Credible Fear Interviews to the class members in the *Ms. L* litigation. *See Ms. L,* Case 3:18-CV-00428-DMS-MDD, Dkt. 220-1 (Sept. 12, 2018 "Plan to address the asylum claims of class-member parents and children who are physically present in the United

States"). Similarly, Defendants were ordered to provide new Credible Fear Interviews to the plaintiff-applicants who—like Mr. A—suffered constitutional defects in their credible fear interviews relating to the *Matter of A-B* guidance. *See Grace v. Whitaker,* 244 F.Supp.3d 96, 146 (noting the unlawful policies caused plaintiff's credible fear determinations); *Grace v. Whitaker,* No. 1:18-cv-01853 (EGS) Dkt. 105 (Dec. 19, 2018 Order) at pp. 3 (vacating negative credible fear determination made under unlawful policy); *see also* Dkt. 4 Ex. 4. Finally, in *Jane Doe,* the District Court provided a stay of removal, immediate reunification and review by an immigration judge. *Doe v. United States Dep't of Homeland Sec.,* 2018 U.S. Dist. LEXIS 116901, *3 (S.D. Tex. July 13, 2018). In asking the Court to rewind the clock to before Mr. A's rights were violated, Plaintiff does not ask the Court to opine on the correctness of the Credible Fear Interview outcome. Plaintiff simply asks the Court to start the process over again so that it can proceed in a constitutionally-sound way, as the plaintiffs were permitted to in *Ms. L,* in *Jane Doe,* and in *Grace*.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that the Court continue the stay of removal, order Defendants to immediately reunite Mr. A with his children, and allow Mr. A to begin the credible fear process over again, free from the constitutionally-defective family separation, and such other and further relief as the Court deems just and proper under the circumstances.


DATE: February 18, 2019                    Respectfully submitted,


                                           By:___ */s/* Michael Scanlon_____
                                           Michael Scanlon, D.C. Bar No. 1048644
                                           HAYNES AND BOONE, LLP
                                           800 17th Street NW, Suite 500
                                           Washington, D.C.20006
                                           Telephone: (202) 654-4570
                                           Facsimile: (202) 654-4249
                                           michael.scanlon@haynesboone.com

Paloma Ahmadi
HAYNES AND BOONE, LLP
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0409
paloma.ahmadi@haynesboone.com

Emily Westridge Black
Jennifer Littlefield*
Wesley D. Lewis
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8422
Facsimile: (512) 867-8605
emily.westridgeblack@haynesboone.com
jennifer.littlefield@haynesboone.com
wesley.lewis@haynesboone.com

Luis Campos
John Brent Beckert
Liz Dankers
Joanna Pearce
Nick Nash
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5062
Facsimile: (214) 200-0789
luis.campos@haynesboone.com
brent.beckert@haynesboone.com
liz.dankers@haynesboone.com
joanna.pearce@haynesboone.com
nick.nash@haynesboone.com

Diana Obradovich*
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3083
Facsimile: (949) 202-3183
diana.obradovich@haynesboone.com

Laura Peña
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Avenue
Alamo, Texas 78516
Telephone: 956-787-7181

John Amaya
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street NW, Eighth Floor
Washington, DC 20036-3537
Telephone: (202) 296-0983
Facsimile: (202) 730-1301
jamaya@hwglaw.com


ATTORNEYS FOR PLAINTIFF MR. A

*Indigent client certification forthcoming per Local Rule 83.2(g).*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February 2019, a copy of this Reply in Support of Plaintiff's Application for a Preliminary Injunction was served via the Court's electronic filing system.  Unredacted copies of Exhibits A–C were served on counsel for Defendants via e-mail.

/s/ Michael J. Scanlon
Michael J. Scanlon
Attorney for Mr. A

18